UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| SANDRA KINDNESS, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:20-cv-137 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| ANTHEM, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

_____

**ENTRY AND ORDER GRANTING DEFENDANTS ANTHEM, INC. AND
ASPIRE HEALTH MEDICAL PARTNERS, P.C.'S MOTION FOR SUMMARY
JUDGMENT (DOC. NO. 22) AND TERMINATING THE CASE**

_____

This case involves a claim by Plaintiff Sandra Kindness ("Kindness") that she was unlawfully terminated from her employment because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*, and in violation of Ohio Revised Code Chapter 4112. Defendants Anthem, Inc. ("Anthem") and Aspire Health Medical Partners, P.C. ("Aspire" and, together, "Defendants") filed a Motion for Summary Judgment (Doc. No. 22) (the "Motion") in which they seek summary judgment on all claims. In her Opposition to the Motion, Kindness argues that she has presented evidence sufficient to establish a *prima facie* age discrimination case and that she has presented evidence that rebuts Defendants' stated reasons for her discharge and raises a jury question concerning pretext. (Doc. No. 37.)

The Court finds that Defendants are entitled to summary judgment on Kindness' claims.[1] Kindness does not attempt to show age discrimination with direct evidence, and she has not

---

[1] Although Kindness requests oral argument on the Motion (Doc. No. 37 at PageID 1445), the Court finds that oral argument is not required or necessary for disposition of the Motion. Accordingly, the Court exercises its discretion under the local rules to deny Kindness' request for oral argument. *See* S.D. Ohio. Civ. R. 7.1(b).

presented evidence sufficient to establish a *prima facie* case of age discrimination.  Kindness does not show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her termination.  The Court **GRANTS** the Motion and **TERMINATES** this case.

## I.      BACKGROUND [2]

### A.  Kindness' Employment

In June of 2016, Aspire hired Kindness as an Advanced Practice Provider ("APP"), a position in which she worked as a nurse practitioner.  (Doc. No. 25 (Kindness Dep.) at PageID 434, 437.)  A few months later, Kindness applied for a Clinical Director position (a promotion), interviewed for that position, and received an offer for that position, which she accepted on or around September 6, 2016.  (*Id.* at PageID 440-42.)  As a Clinical Director, among other things, she supervised approximately five or six nurse practitioners.  (*Id.* at PageID 443-46.)  While Clinical Director, Kindness was never disciplined and did not have any issues with any of her supervisors.  (*Id.* at PageID 446-47.)

In or around May of 2017, despite Kindness' highly rated clinical performance, Aspire's Regional Vice President, Jessica Rousseaux, demoted Kindness from Clinical Director to a Team Lead position, purportedly because Kindness lacked the ability to interpret data from her market reports to Aspire management.  (Doc. No. 25 at PageID 448-51; Doc. No. 27 (Rousseaux Dep.) at PageID 734-40; *see also* Doc. No. 25 at PageID 449 (Kindness acknowledging that a supervisor had rated her 2 out of 5 (needs development) in the leadership category).)  The individuals who consecutively replaced Kindness as Clinical Director, Lawanda Martindale ("Martindale") and

---

[2] For purposes of resolving the Motion, the recitation in the "Background" section includes undisputed facts and otherwise assumes the evidence of the non-moving party as true and draws all reasonable inferences in the nonmoving party's favor, as is appropriate at this stage.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014).

Samantha Piotrowski ("Piotrowski"), were significantly younger than her.  (Doc. No. 25 at PageID 487-90; Doc. No. 33 (Kindness Decl.) at PageID 987; *see also* Doc. No. 27 at PageID 727-29 (Regional Vice President Rousseaux initially filled the Clinical Director position on an interim basis, then Martindale was hired in the position, and then Piotrowski became the Clinical Director).)

### B. Termination

In 2018, Anthem purchased Aspire.  (Doc. No. 24 (Graham Dep.) at PageID 296.)  On November 1, 2018, after having served as a Team Lead for approximately a year-and-a-half, Kindness was informed that she had been terminated.  (Doc. No. 25 at PageID 479.)  Kindness testified that she was told during a telephone call that "Anthem was doing a restructure," she "was part of that restructure," and it meant that she was being terminated.  (Doc. No. 25 at PageID 479-80.)  Piotrowski, who was Kindness' supervisor at the time, testified that she made the decision to select Kindness (as well as two other employees) for termination, "with the support and backing of the senior leadership team."  (Doc. No. 26 (Piotrowski Dep.) at PageID 677; Doc. No. 35-2 at PageID 1008-09.)  Kindness was 64 years old at the time of her termination.  (Doc. No. 25 at PageID 377; Doc. No. 37 at PageID 1447.)

### C. Post-Termination

Defendants never had any intention of eliminating the Team Lead position; they always intended to replace Kindness.  (Doc. No. 26 at PageID 679.)  None of the three individuals who were terminated—including Kindness—were immediately replaced in November of 2018.  (*Id.* at PageID 677-78.)  Piotrowski explained: "[W]e were in a huge amount of transition," and Kindness' position was always going to be filled—"[i]t was just a matter of when."  (*Id.* at PageID 679.)  That winter, after conducting interviews, Piotrowski decided to make Louis Carter ("Carter") the Team Lead, and Carter started in the position on or around March 4, 2019.  (*Id.* at PageID 679-82; Doc.

35-2 at PageID 1010.)  The individuals who Kindness had previously supported in her position as Team Lead started falling under the responsibility of Alison Taylor ("Taylor") for a period of time until Carter took the Team Lead position.  (Doc. No. 26 at PageID 679-81.)  Carter and another individual (not Taylor) had interviewed for the Team Lead position.  (*Id.* at 681-82.)  Taylor is 32 years younger than Kindness, while Carter is three years younger than Kindness.  (Doc. No. 35-1 at PageID 1004.)

On February 14, 2019, the Equal Employment Opportunity Commission ("EEOC") received a Charge of Discrimination from Kindness.  (Doc. No. 25-6.)  In the charge, Kindness stated that she "was terminated effective November 2, 2018" and that she believed she had "been terminated because of [her] age rather than any legitimate reason."  (*Id.*)  On or around January 13, 2020, Kindness received a Dismissal and Notice of Rights letter from the EEOC.  (Doc. No. 4 at PageID 12; Doc. No. 25 at PageID 499-500; Doc. No. 25-6 at PageID 586.)

On April 10, 2020, Kindness filed this action.  (Doc. No. 1.)  She amended her complaint on July 20, 2020.  (Doc. No. 4.)  Kindness brings two claims, one for age discrimination in violation of the ADEA and one for age discrimination in violation of Ohio Rev. Code Chapter 4112. (*Id.*)  On September 14, 2021, Defendants filed the Motion.  (Doc. No. 22.)  Kindness filed an Opposition to the Motion (Doc. No. 37), and Defendants filed a Reply brief (Doc. No. 40).  The Motion is fully briefed and ripe for review.

## II.  LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id.* at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to

determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is "whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

## III.   **ANALYSIS**

In the Motion, Defendants make three overarching arguments for why they are entitled to summary judgment: (1) Kindness' *prima facie* case for age discrimination fails; (2) they had a legitimate, nondiscriminatory basis for the adverse actions taken against Kindness; and (3) Kindness cannot demonstrate pretext. (Doc. No. 22.) As shown in the analysis below, the Court need only—and does only—address Defendants' first argument because it is dispositive. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (where the court concluded that plaintiff "was not replaced by a significantly younger person" and "therefore failed to make his prima facie case," the court did not need to "address the legitimate-reason and pretext parts of the *McDonnell* analysis").

### A.   **Framework for Age Discrimination Claims**

The ADEA makes it "unlawful for an employer to … discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the Ohio Revised Code states that "[n]o employer shall discriminate in any job opening against

6

any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."  Ohio Rev. Code § 4112.14(A).  "Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis."  *Grosjean*, 349 F.3d at 340; *see also Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 727 (6th Cir. 2007) ("Ohio courts generally decide state law age discrimination claims under federal law interpreting Title VII").

"Plaintiffs must 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the but-for cause of the challenged employer decision.'"  *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323-24 (6th Cir. 2021) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).  "This requires showing that age was *the* determinative reason they were terminated; that is, they must show that age was the reason that the employer decided to act."  *Id.* at 324 (internal quotation marks omitted; emphasis in original).  "Under *Gross*, satisfying but-for cause requires plaintiffs to show that age *had a determinative influence on the outcome* of the employer's decision-making process."  *Id.* (internal quotation marks omitted; emphasis in original).  Thus, to defeat summary judgment on a claim of age discrimination under the ADEA, a plaintiff "must show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of her termination."  *Id.*

A plaintiff who cannot show age discrimination with direct evidence "may attempt to show age discrimination with circumstantial evidence," which courts "evaluate using the three-step burden shifting analysis" from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973).  *Pelcha*, 988 F.3d at 324.  In the first step, the plaintiff must establish a *prima facie* case of discrimination.  *Id.* at 325.  Thus, the "plaintiff has the initial burden of demonstrating" the

elements of the claim. *Corrigan*, 478 F.3d at 727. If the plaintiff succeeds, then for the second step "the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination." *Pelcha*, 988 F.3d at 325. If the employer does so, then for the third step "the burden shifts back to the plaintiff to prove the employer's reason is a mere pretext." *Id.* "If the plaintiff prevails, the factfinder may reasonably infer discrimination." *Id.*

### B. The *Prima Facie* Case

Here, Kindness does not attempt to show age discrimination with direct evidence. (*See* Doc. No. 37 at PageID 1451 (acknowledging that the *McDonnell Douglas* framework is applicable to this case).) Therefore, the Court moves to the first step of the three-step burden shifting analysis from *McDonnell Douglas*: Kindness must "establish a prima facie case of age discrimination." *Pelcha*, 988 F.3d at 324, 326. "To do so, she must show that (1) she was a member of a protected class (older than 40 years old); (2) she suffered an adverse employment action; (3) she was qualified for the position held; and (4) she was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably." *Id.* at 326; *see also Grosjean*, 349 F.3d at 335. The showing must be made "by a preponderance of the evidence." *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1390 (6th Cir. 1993). "This light burden is easily met and not onerous." *Pelcha*, 988 F.3d at 326. However, it still must be met. *See, e.g., Grosjean*, 349 F.3d at 334 (affirming summary judgment for employer where plaintiff former employee "failed to make his prima facie case of age discrimination because he was not replaced by a person significantly younger than himself"); *Corrigan*, 478 F.3d at 727-28 (affirming summary judgment for employer; finding that, except with respect to one position, plaintiffs failed to meet the requirements of a *prima facie* case because they did not offer any evidence that they were qualified for the positions or the positions were filled by a person plaintiffs admitted was within the protected class); *Minadeo v. ICI Paints*, 398 F.3d 751, 765 (6th Cir. 2005)

8

(affirming summary judgment for employer on age discrimination claim because plaintiff failed to establish the fourth element necessary to make out a *prima facie* case of age discrimination); *see also Shockley v. Morristown-Hamblen Hosp. Ass'n*, No. 2:16-cv-257, 2018 U.S. Dist. LEXIS 185305, 2018 WL 11372776, at *6 (E.D. Tenn. Oct. 16, 2018) (the purpose of the first step is "to efficiently resolve preliminary issues by ruling out common defenses"); *Texas Dept. of Cmty. Aff. v. Burdine*, 450 U.S. 248, 253-54 (1981) ("[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection").

Here, Defendants do not dispute that Kindness can establish the first three elements of her *prima facie* case of age discrimination. (*See* Doc. No. 22 at PageID 103.) Only the fourth element is at issue: whether "she was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably." *Pelcha*, 988 F.3d at 326. Significantly, in determining who "replaced" a plaintiff, the Sixth Circuit has explained:

> A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Grosjean*, 349 F.3d at 336 (internal quotation marks omitted); *see also Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 809 (6th Cir. 2020) (the relevant inquiry is who was hired to assume the plaintiff's responsibilities); *Martin v. Licking Cnty. Common Pleas Ct. Juvenile Div.*, No. 2:03-cv-867, 2005 U.S. Dist. LEXIS 9013, 2005 WL 1073367, at *8 (S.D. Ohio Apr. 25, 2005) ("it is not those who assume a terminated employee's responsibilities immediately after her termination who are regarded as replacements for purposes of the *prima facie* case," but rather "a person is 'replaced' only when another employee is hired or reassigned to permanently perform the plaintiff's duties"). In *Grosjean*, the Sixth Circuit rejected the plaintiff's argument "that he was

initially replaced by [an employee], who temporarily took over [plaintiff's] duties in addition to his own," because that employee's temporary assumption of plaintiff's duties did not constitute "replacement." *Id.* at 335-36. Instead, plaintiff was "replaced" by a different employee who eventually filled plaintiff's former position months later. *Id.* at 334, 336.

Regarding "the protected class," "[i]n age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean*, 349 F.3d at 335. Thus, in *Grosjean*, the fact that the employee who replaced the plaintiff was also part of the protected class of workers over 40 did not preclude the plaintiff from making a *prima facie* case. *Id.* at 336. "However, the prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion," and that "inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* at 336. The Sixth Circuit held that, "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id.* at 340 (granting summary judgment for employer on age discrimination claim because plaintiff's replacement was not more than six years older than plaintiff and plaintiff presented no direct evidence that employer considered age to be significant).

Here, Defendants argue that Kindness "cannot establish that she was replaced by someone outside the protected class or, in the alternative, treated less favorably than her similarly-situated peers outside the protected class." (Doc. No. 22 at PageID 103.) In response, Kindness argues that "evidence that Kindness was initially replaced by Alison Taylor who is significantly younger [than her] establishes a prima facie case." (Doc. No. 37 at PageID 1451.)

### 1) **Kindness' replacement**

Therefore, the initial question presented here is who "replaced" Kindness. The Court finds that the evidence presented does not support that Taylor "replaced" Kindness, but instead supports that Carter "replaced" Kindness. *See Martin*, 2005 WL 1073367, at *7 (determining that "[t]he evidence in this case establishes that Plaintiff's co-workers temporarily divided up and assumed her duties, in addition to their own, until Ms. Wilson was hired to permanently replace Plaintiff," so "for purposes of considering the *prima facie* case, the Court concludes that Plaintiff was replaced by Ms. Wilson"). As was the scenario in *Martin*, the evidence presented shows that Kindness' responsibilities were temporarily performed by Taylor (and possibly other co-workers) until Carter was hired to permanently perform Kindness' duties. (*See* Doc. No. 26 at PageID 679-82; Doc. 35-2 at PageID 1010.) Kindness has not shown by a preponderance of the evidence that Taylor "replaced" her. Instead, for purposes of considering the *prima facie* case, the Court concludes that Kindness was replaced by Carter. *Martin*, 2005 WL 1073367, at *8; *Grosjean*, 349 F.3d at 336; *Willard*, 952 F.3d at 809 (the relevant inquiry is who was hired to assume the plaintiff's responsibilities).

The approximately four-month delay in filling Kindness' position with Carter does not affect this conclusion. *See Martin*, 2005 WL 1073367, at *8 (plaintiff's duties were performed by other employees "until a permanent replacement was hired" six months after plaintiff was terminated); *Shockley*, 2018 WL 11372776, at *7-8 (plaintiff established *prima facie* case of age discrimination where plaintiff's responsibilities were redistributed among other employees for nine months before her position was eventually filled by an employee who was thirty years her junior). Piotrowski explained that, at the time Kindness was terminated, Defendants "were in a huge amount of transition" and Kindness' position was always going to be filled—"[i]t was just a matter of when." (Doc. No. 26 at PageID 679.) At the time, Aspire was going through the process

of integrating into Anthem. (Doc. No. 24 at PageID 325-26.) Piotrowski and others conducted interviews the month after terminating Kindness to determine who would replace her as Team Lead, and then Piotrowski selected Carter. (Doc. No. 26 at PageID 679-82, 684.) Given the situation, it is not surprising that Kindness' former duties as Team Lead would need to be temporarily performed by another (or others) until a permanent replacement could be interviewed and hired to that position. *See Willard*, 952 F.3d at 809 ("[g]iven the time to post a job description, interview candidates, and make a selection," a month was a short amount of time between termination and hiring plaintiff's replacement).

Having concluded that Carter was Kindness' replacement, and given that both women were within the protected class at the time of Kindness' termination, the follow-up question is whether Carter is significantly younger than Kindness. *See Grosjean*, 349 F.3d at 336; *Martin*, 2005 WL 1073367, at *8. Kindness was 64 years old at the time of her termination, and Carter is only three years younger than Kindness. (Doc. No. 35-1 at PageID 1004.) Therefore, Kindness has not met her burden of showing that she was replaced by someone outside of the protected class or significantly younger than her without direct evidence that Defendants considered age to be significant. *Grosjean*, 349 F.3d at 334-36, 340 ("in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant"); *Martin*, 2005 WL 1073367, at *8; *Clevidence v. Wayne Sav. Cmty. Bank*, 143 F. Supp. 2d 901, 908 (N.D. Ohio 2001) (granting summary judgment for employer on age discrimination claims where plaintiff's duties were initially split between three employees, but uncontradicted deposition testimony supported that defendant promoted another employee—who was not substantially younger than plaintiff—within a month to take over plaintiff's former duties, such that the other employee replaced plaintiff).

### 2) **Kindness' other arguments concerning the fourth element**

Kindness makes additional arguments in an attempt to counter Defendants' assertion that she failed to make out a *prima facie* case. However, none is convincing.

Kindness argues that, "given Defendants' insistence that this is not a RIF [reduction-in-force] case, the question of whether [Kindness'] job duties were re-distributed among existing employees does not govern the inquiry into who replaced Kindness." (Doc. No. 37 at PageID 1452.) While Kindness states that multiple witnesses referred to Defendants' termination process as a RIF (Doc. No. 37 at PageID 1447), both Kindness and the Defendants indicate this is not a work force reduction case—and the Court agrees with the parties. (*See, e.g.,* Doc. No. 37 at PageID 1455 (Kindness' Opposition brief pointing out that "neither Plaintiff nor undersigned counsel were ever provided with the requisite OWBPA information that should have been given to Plaintiff had she been terminated as part of a RIF"); Doc. No. 40 at PageID 1476 (Defendants' Reply brief stating that "this is not a work force reduction case").) The Sixth Circuit has explained that "[a]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Here, there is no dispute that Kindness was replaced after her discharge; instead, the dispute is over who replaced Kindness, analyzed above. (*See, e.g.,* Doc. No. 37 at PageID 1451 (Kindness' Opposition pointing out that "[t]he record is also clear that Defendants never intended to eliminate Kindness's position as a Team Lead" and arguing that Kindness was "initially replaced by Alison Taylor").) In the preceding section, the Court set forth, and analyzed, the questions that govern the inquiry into who replaced Kindness.[3]

---

[3] Furthermore, if this case involved a work force reduction, then Kindness would have a <u>heightened</u> burden for establishing a *prima facie* case. *Barnes*, 896 F.2d at 1465; *Geiger v. Tower Automotive*, 579 F.3d 614, 623 (6th Cir. 2009) ("[i]f the termination arises as part of a work force reduction, this court has modified the fourth element to require the plaintiff to provide additional direct, circumstantial, or statistical evidence tending to indicate that the

Another argument made by Kindness is that, "while Lois Carter was eventually made a Team Lead, she was assigned to a region that did not exist at the time Kindness served in that role." (Doc. No. 37 at PageID 1452.) However, Kindness fails to explain why this assertion—even if true—would establish that she has made out a *prima facie* case of age discrimination. She also cites no supporting legal authority. Moreover, elsewhere in her Opposition, Kindness acknowledges that Carter at least eventually replaced Kindness, regardless of whether the regions assigned were identical. (*See* Doc. No. 37 at PageID 1448 (arguing that "Kindness was initially replaced by Alison Taylor … [and] [o]nly *after* Kindness hired counsel to represent her in this matter did Defendants replace Taylor with Lois Carter").)

Kindness also argues that "Carter was placed into the Team Lead position *after* Kindness initiated legal action in this matter—giving rise to an inference that she was intentionally selected to 'replace' Kindness because they are relatively close in age and thereby Defendants could avoid liability for age discrimination." (Doc. No. 37 at PageID 1452-53.) First and foremost, Kindness fails to cite any legal authority for this assertion. Additionally, the premise is entirely speculative. She fails to cite any factual support for this argument, and it is unclear what Kindness even means by "initiated legal action in this matter," given that this case was filed in April of 2020. Earlier in her Opposition she does assert that "[o]nly *after* Kindness hired counsel to represent her in this matter did Defendants replace Taylor with Lois Carter." (Doc. No. 37 at PageID 1448.) In support of that assertion, she cites a letter dated November 20, 2018 from her legal counsel in this case to Defendants' Vice President of Human Resources, but the letter focuses on a severance offer and never mentions or alleges potential discrimination. (Doc. No. 35-3.) And, Kindness provides no

---

employer singled out the plaintiff for discharge for impermissible reasons"; "[b]ecause his discharge and failure to be re-hired arose from a work force reduction, [plaintiff] must meet a heightened standard to establish a *prima facie* case").

evidence indicating that any decisionmaker for replacing her was even aware of the letter or any legal action whatsoever.

Kindness makes one final argument concerning the *prima facie* case. In its entirety, Kindness argues: "Lastly, it is undisputed that after Kindness was demoted from the Clinical Director position, both individuals who consecutively replaced her in that role—Lawanda Martindale and Samantha Piotrowski—were significantly younger" than Kindness and "[t]his fact is additional evidence that supports an inference of discrimination and can satisfy [Kindness'] minimal burden under the fourth prong." (Doc. No. 37 at PageID 1453.) Kindness then cites the Sixth Circuit's opinion in *Willard* at its page 808, but she does not elaborate any further on this argument.

As an initial matter, for at least a couple of reasons, the Court does not interpret this argument as a claim for age discrimination concerning the demotion. First, Kindness never states in her Opposition that she is claiming the demotion was because of her age, even after Defendants expressed their concern in the Motion that Kindness attempted during her deposition to allege that Defendants also discriminated against her on the basis of her age when they demoted her from the Clinical Director role to the Team Lead role. (*See* Doc. No. 22 at PageID 104.) Instead, Kindness describes this as "additional evidence." (Doc. No. 37 at PageID 1453.) Second, Kindness could not bring such a claim in this case. "A district court does not have subject matter jurisdiction to hear an ADEA or Title VII claim unless the claimant explicitly filed the claim in an EEOC charge or the claim can reasonably be expected to grow out of an EEOC charge." *Clevidence v. Wayne Sav. Cmty. Bank*, 143 F. Supp. 2d 901, 905-06 (N.D. Ohio 2001) (finding that plaintiff-employee had not exhausted her administrative remedies regarding her allegations that defendant-employer denied her promotions and job assistance given to younger employees, and therefore the court did

not have subject matter jurisdiction to hear that aspect of plaintiff's claim, where plaintiff's EEOC charge alleged age discrimination only regarding her firing and did not allege she was discriminated against because defendant-employer denied her promotions or job assistance); *see also* 29 U.S.C. § 626(d); *Southmayd v. Apria Healthcare, Inc.*, 412 F. Supp. 2d 848, 859 (E.D. Tenn. 2006) (court did not have subject matter jurisdiction to hear discrimination claim relating to defendant's failure to rehire plaintiff, where plaintiff only had filed a charge of discrimination with the EEOC relating to defendant's termination of plaintiff). Kindness' Charge of Discrimination filed with the EEOC never mentioned the demotion; it only relates to her termination. (*See* Doc. No. 25-6; *see also* Doc. No. 25 (Deposition of Kindness) at PageID 496 ("Q. Now, for this charge of discrimination, it appears that you were alleging age discrimination in connection with your termination; is that correct? A. Correct. Q. And I don't see any allegation that you experienced any other discriminatory action other than your termination; is that correct? A. Correct.").)

Based on her citation to *Willard*, the Court assumes that Kindness is arguing that this evidence of who replaced Kindness in the Clinical Director Position establishes the other alternative for showing the fourth element of a *prima facie* case: "similarly situated non-protected employees were treated more favorably." *Pelcha*, 988 F.3d at 326; *see also Willard*, 952 F.3d at 808 (stating that the *prima facie* case's fourth requirement is to show "there are circumstances that support an inference of discrimination," and "such circumstances include when the employer replaced the plaintiff with a younger employee and when the employer treated similarly situated, non-protected employees more favorably") (internal citation and quotation marks omitted). This case is distinguishable from *Willard*, where the court had already recognized that plaintiff-salesman "offered enough evidence to permit a reasonable jury to conclude that he was replaced by a younger salesperson." *Willard*, 952 F.3d at 808. The court went on to note too that

16

uncontroverted evidence showed plaintiff's direct supervisor took an action (namely, processing plaintiff's paperwork more slowly than that of younger salespersons) that negatively impacted plaintiff's ability to perform his job. *Willard*, 952 F.3d at 809-10. The court in *Willard* found that the direct supervisor's "preferential treatment [toward the younger salespersons] supports an inference of discrimination based on age at the prima facie stage." *Id.* (internal quotation marks omitted).

The Court has already explained that Kindness has not offered enough evidence to permit a reasonable jury to conclude that she was replaced by a younger employee. And, more importantly for this argument, apart from simply identifying them as the people who replaced her in the Clinical Director role, Kindness does not even attempt to show that Martindale and Piotrowski were "similarly situated" employees or explain how Martindale and Piotrowski "were treated more favorably." *Minadeo*, 398 F.3d at 764 ("[i]t is fundamental that to make a comparison of a discrimination-plaintiff's treatment to that of an employee outside the protected class, the plaintiff must show that the comparables are similarly-situated *in all respects*") (emphasis in original; internal quotation marks omitted; alteration adopted). Therefore, Kindness also has not met her burden of showing that similarly situated non-protected employees were treated more favorably. *Barnhart*, 12 F.3d at 1390; *Pelcha*, 988 F.3d at 326; *Minadeo*, 398 F.3d at 764-65 (affirming summary judgment for defendant after concluding that plaintiff failed to establish the fourth element necessary to make out a *prima facie* case of age discrimination). Kindness' sole authority (*Willard*) and the evidence presented in this case do not show circumstances that support an inference of discrimination concerning the claims here.

In summary, Kindness does not attempt to show age discrimination with direct evidence, and she fails to make a sufficient showing to establish a *prima facie* case of age discrimination.

17

*Grosjean*, 349 F.3d at 340.  Thus, Kindness' age discrimination claims fail.  *Id.* ("as Grosjean's federal claim failed, so must his state law claim").

### IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 22).  This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, December 30, 2021.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE